IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN DEBBS and LIBERTY NATIONAL TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>CDK FUND I SPV, LLC, CDK CAPITAL PARTNERS I, LLC, CODY KERNS, and ESSENTIAL FUND SERVICES INTERNATIONAL, LLC,<br><br>Defendants. | Civil Action No. 25-205-RGA |

MEMORANDUM ORDER

Before me are Defendants' motions to dismiss. (D.I. 89, 91). The motions have been fully briefed. (D.I. 90, 92, 94, 95, 104, 107). For the reasons set forth below, Defendants' motions are GRANTED. I DISMISS all claims WITHOUT PREJUDICE. Plaintiffs are granted LEAVE to FILE a MOTION to AMEND their complaint within fourteen (14) days of issuance of this order.

This action arises out of alleged fraud connected with Plaintiffs' investments in non-parties CDK Fund I, LP ("CDK I LP") and CDK Fund II, LP ("CDK II LP"); the four defendants named as perpetrators of the fraud are Cody Kerns, CDK Fund I SPV, LLC ("CDK SPV"), CDK Capital Partners I, LLC ("CDK LLC") (collectively, the "Kerns Defendants"), and Essential Fund Services International, LLC ("EFSI"). (D.I. 1 at ¶¶ 1-9).

Plaintiffs became acquainted with Defendant Kerns sometime in January 2023; Defendant Kerns was marketing a securities offering in CDK I LP, whose general partner was CDK LLC. (*Id.* at ¶ 30). CDK I LP's stated investment strategy, among other things, relied upon use of its "[algorithmic] software" to generate capital through "trading and arbitrage differences"

1

and its ability to "take advantage of opportunities in diverse asset classes if they meet the Investment Manager's standards of investment merit." (*Id.* at ¶ 37). CDK I LP's offering documents disclosed that "other entities" could be formed "to hold certain investment assets that cannot be held in U.S. entities under current law." (*Id.* at ¶ 38).

Plaintiffs began investing in CDK I LP in January 2023. Plaintiffs invested $800,000 in CDK I LP on or about January 16, 2023 and invested another $300,000 on or about January 24, 2023. (*Id.* at ¶¶ 43-44). CDK I LP sent Plaintiffs a partner statement that purported to record a gain in Plaintiffs' investment of $57,485.71 in February 2023; Plaintiffs claim, however, that "*no forex trading or other trading of securities had been executed by Defendants for the benefit of* [CDK I LP] . . . . [I]t was all a sham." (*Id.* at ¶ 45). Instead, the Kerns Defendants transferred money from CDK I LP to a Hong Kong company, FxWinning, which "allegedly provided forex currency and other trading strategies through unspecified executing brokers in jurisdictions outside of the United States for non-U.S. customers, [but] was a fraud." (*Id.* at ¶¶ 47, 51, 74).

FxWinning notified the Kerns Defendants in February of 2023 that "no withdrawals would be allowed" because of new anti-money laundering requirements. (*Id.* at ¶ 54). On April 16, 2023, FxWinning posted on their website an announcement which read, "Our goal is to normalize all withdrawals as soon as possible, ensuring security and compliance with applicable regulations." (*Id.* at ¶ 56). In April, May, and June of 2023, CDK I LP continued to issue partnership statements to Plaintiffs showing "fictitious" gains in Plaintiffs' accounts.[1] (*Id.* at ¶¶

---

[1] Plaintiffs plead that this gain was fictitious because "there was no actual forex or other trading generating an underlying profit." (D.I. 1 at ¶ 57). Although it does not determine my decision here, I do note that Plaintiffs fail to plead any facts that would give rise to a reasonable inference that CDK I LP did not in fact engage in forex trading or trading of other commodities or securities that would have generated an underlying profit. For instance, beyond Plaintiffs' unsupported claim that FxWinning was a fraud, there is nothing in the pleadings that would allow me to draw a reasonable inference that FxWinning did not actually engage in legitimate

2

57-58, 73). Plaintiffs continued to transfer money to CDK I LP: $850,000 on May 24, 2023, and $350,000 on May 30, 2023. (*Id.* at ¶¶ 59, 62). Additionally, on June 5 and June 14, 2023, Plaintiffs transferred a total of $1,000,000 to another one of the Kern Defendants' offerings, CDK II LP. (*Id.* at ¶ 66). On June 20, 2023, FxWinning posted an announcement to its website, which stated, among other things, "FxWinning [] regrets to inform you that due to unforeseen circumstances, our services will cease on **Thursday, 22.06.2023.** . . . Kindly withdraw your remaining funds promptly, and our team will assist you in the process. Withdrawals will be available until Friday 30.06.2023." (*Id.* at ¶ 67). It appears that the Kern Defendants were unable to withdraw CDK I LP's money from FxWinning, as Plaintiffs were informed on July 15, 2023, by a "promoter and later officer and director of [CDK LLC]" that the Kern Defendants "had transferred all or substantially all of [CDK I LP's] assets and control over same to FxWinning and that at least seventy percent (70%) of [CDK I LP's] assets that [the Kern] Defendants had sent to FxWinning were lost." (*Id.* at ¶ 74). On July 24, 2023 the Kern Defendants filed an action against FxWinning in Florida state court. (*Id.* at ¶ 75). The day after, Plaintiffs agreed to wire an additional $185,000 to CDK II LP. (*Id.* at ¶ 77).

On August 11, 2023, the Kern Defendants sent Plaintiffs a newsletter that linked to a confidential offering memorandum that disclosed that CDK LLC "could create special purpose vehicles ("SPVs") into which [CDK LLC] could cause [CDK I LP] to transfer its interests for the limited partners."[2] (*Id.* at ¶ 80). Sometime in August 2023, the Kern Defendants engaged

---

forex trading, nor is there any indication from the pleadings that CDK I LP did not engage in forex or other trading either by themselves or through/with other brokers/counterparties that might have generated a real profit for Plaintiffs.

[2] I should note, as the Middle District of Florida also pointed out (D.I. 68 at 10), that the ability of CDK LLC to do so had already been disclosed in the Limited Partnership Agreement of CDK I LP, which Plaintiffs had signed. (D.I 43-1 at § 2.07(n)). This section grants the General Partner (i.e., CDK LLC) the ability to "organize one or more corporations or other entities formed to

3

Defendant EFSI as the new fund administrator for CDK I LP. (*Id.* at ¶ 86). On August 14, 2023, Plaintiffs submitted a withdrawal request of $1,200,000 to CDK I LP. (*Id.* at ¶ 89). CDK I LLC and CDK SPV did not respond to the withdrawal request. (*Id.* at ¶¶ 89, 92).

On September 5, 2023, "quietly and with no disclosure to Plaintiffs, Defendants [CDK LLC] and Cody Kerns caused [CDK SPV] to be formed . . . and caused [CDK I LP] to make a capital contribution of $1,253,888.14 of Plaintiffs' monies . . . to Defendant [CDK SPV]." (*Id.* at ¶ 91). At some unstated point in time thereafter,[3] the Kern Defendants sent a communique to Plaintiffs detailing the following two choices to Plaintiffs:

> Liquid Balance Full Release: Should you wish to exit, you can request to withdraw 100% of your September NAV Liquid balance. Do note that this may be approximately 10-15% less than the July NAV, due to certain stock positions being in the red for August and September. In choosing this route, you would formally request an exit as an LP, and upon agreement, sign a document to forfeit your entire SPV value to the GP. Consequently, this will reflect as a loss on your 2023 K1. If this is the option you choose please note the requested redemption will be issued to you by the end of 2023.
>
> Continue the Partnership: By choosing this path, you uphold your SPV value, preserving your liquid balance to sustain trading and further support the fund's continued efforts to address the ongoing legal dispute. If, however, you find the need to access some of your liquid funds, we recommend requesting approximately 50% of your liquid balance. For this option, you will receive a K1 detailing the values of both the SPV and liquid balance for 2023, with the associated tax implications for any gains.

(*Id.* at ¶ 96).

"Plaintiffs accepted neither unlawful option." (*Id.* at ¶ 97). Instead, on November 1, 2023, Plaintiffs sent a demand letter to the Kern Defendants requesting a return of their

---

hold record title, as nominee for [CDK I LP] (whether alone or together with the other clients) to Securities or funds of [CDK I LP]." (*Id.*).

[3] From the context of the Complaint, it would appear to be sometime in October 2023, but Plaintiffs do not specify. (*See* D.I. 1 at ¶¶ 95-98).

$1,253,888.14 invested capital in CDK SPV. (*Id.* at ¶ 123). The Kern Defendants refused a few days later. (*Id.* at ¶¶ 127-28).

Plaintiffs allege that, since EFSI's engagement as Fund Administrator in August 2023, EFSI continued to send Plaintiffs "purported NAV Statements reflecting fictitious monthly losses allocated to Plaintiffs" and "created monthly NAV Statements, which materially misrepresented the value of Plaintiffs' investments – profits and losses." (*Id.* at ¶¶ 119, 147).

Plaintiff subsequently brought suit in the United States District Court for the Middle District of Florida for violation of the Securities Exchange Act in addition to various state law claims. (*Id.* at ¶¶ 143-218). The Middle District transferred the case to this District. (D.I. 68). I recently denied Plaintiffs' motion seeking to have this case transferred back to the Middle District. (D.I. 123).

"To recover damages for violations of section 10(b) [of the Securities Exchange Act], a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013)). "Reliance . . . is an essential element of the § 10(b) private cause of action because proof of reliance ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury. The traditional (and most direct) way for a plaintiff to demonstrate reliance is by showing that he was aware of a

company's statement and *engaged* in a relevant transaction . . . based on that specific misrepresentation." *Amgen*, 568 U.S. at 461 (cleaned up) (emphasis added).[4]

I think Plaintiffs' pleadings do not state a claim, because Plaintiffs fail to adequately plead reliance. To allege justifiable reliance, Plaintiffs state, "But for the misrepresentations and omissions committed by the Defendants concerning their lack of diligence [and] proprietary '[algorithmic] trading software' . . ., Plaintiffs would not have agreed to enter into any investments with the Defendants." (D.I. 1 at ¶ 133). Similarly, Plaintiffs later note, "Had Plaintiffs known that Defendants' representations were false and misleading, Plaintiffs would not have deposited funds with Defendants." (*Id.* at ¶ 153).

Plaintiffs explicitly state, however, in their answering brief to the Kern Defendants, "[T]his action concerns the purchase of a membership interest for $1,253,888.14 in [CDK SPV]," and Plaintiffs disclaim any relation between this action and Plaintiffs' "earlier investments in non-party [CDK I LP]." (D.I. 94 at 10 n.14).[5] Similarly, in Plaintiffs' answering brief to EFSI, Plaintiffs state, "Plaintiffs did not commence an action against [CDK I LP or CDK II LP]. . . . This is an action against [CDK SPV], [CDK LLC], Cody Kerns, and [EFSI] relating to Plaintiffs' 2023 purchase

---

[4] The other main way by which Plaintiffs can show "reasonable reliance," the so-called "fraud-on-the-market theory," which "recognize[s] a rebuttable presumption of . . . reliance on public, material misrepresentations when shares are traded in an efficient market," is not applicable here. *Amgen*, 568 U.S. at 463.

[5] The relevant passage states:
> Instead, the [Kern] Defendants argue that the fictitious account statements and net asset values that post-date May 2023, are irrelevant, because Plaintiffs had already made earlier investments in nonparty [CDK I LP], but, again, this action concerns the purchase of a membership interest for $1,253,888.14 in [CDK SPV]. *See* Defs.' Br. at p. 8 and fn. 5. Consequently, the [Kern] Defendants' attack on Count I, at this juncture, fails.

(D.I. 94 at 10 n.14).

of a membership interest in [CDK SPV]." (D.I. 95 at 12). In their complaint, Plaintiffs characterize their "purchase" of a membership agreement in CDK SPV as follows, "On September 5, 2023, *quietly and with no disclosure to Plaintiffs*, Defendants [CDK LLC] and Cody Kerns caused [CDK SPV] to be formed and organized in Florida and caused [CDK I LP] to make a capital contribution of $1,253,888.14 of Plaintiffs' monies . . .to [CDK SPV.]" (D.I. 1 at ¶ 91) (emphasis added). A little later, Plaintiffs plead, "Defendants [CDK SPV], [CDK LLC,] and Cody Kerns directly and through counsel[] have misrepresented the nature and purpose of the creation of [CDK SPV], the circumstances surrounding their *forced sale and purchase* of the security to Plaintiffs [and] the use of Plaintiffs' capital. . . ." (*Id.* at ¶ 130) (emphasis added).[6] It appears Plaintiffs neither chose to engage in nor were even initially aware of the transfer of their capital from CDK I LP to CDK SPV. Plaintiffs' own pleadings thus belie their later assertion, "Had Plaintiffs known that Defendants' representations were false and misleading, Plaintiffs would not have deposited funds with Defendants." (*Id.* at ¶ 153).

Taking Plaintiffs' pleading as true, Plaintiffs cannot show that they relied upon any fraudulent misrepresentation on the part of the Kerns Defendants in relation to what Plaintiffs themselves repeatedly characterize as the relevant transaction: the transfer by the Kerns Defendants of Plaintiffs' money from CDK I LP to CDK SPV. Plaintiffs simply did not "engage" in that particular transaction at all. Since Plaintiffs have not adequately pleaded reasonable reliance, Plaintiffs have not pleaded facts sufficient to state a claim under the Securities Exchange Act.

---

[6] *See also* D.I. 1 at ¶¶ 115-16. "Defendants . . . caus[ed] the withdrawal and transfer of Plaintiffs' $1,253,888.14 to [CDK SPV]." "Defendants [CDK LLC] and Cody Kerns unlawfully forced Plaintiffs to purchase their membership interest" in CDK SPV.

Plaintiffs have requested dismissal without prejudice so that they may seek leave to amend as to the Kern Defendants. (D.I. 94 at 17). "The court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). I certainly cannot say that granting leave to amend would be futile. As such, I DISMISS the Securities Exchange Act claim against the Kerns Defendants WITHOUT PREJUDICE.

Plaintiffs have requested dismissal without prejudice so that they may seek leave to amend as to EFSI. (D.I. 95 at 17). The last investment decision Plaintiffs engaged in with respect to any CDK entity was to wire $185,000 to CDK II LP "[o]n or about July 25, 2023." (D.I. 1 at ¶ 77). EFSI was not engaged by the Kern Defendants as a fund administrator until August 2023. (*Id.* at ¶ 86). According to Plaintiffs' own timeline, EFSI only entered the picture after Plaintiffs had already finished engaging in and executing their investments in various CDK Funds. As I noted above, the Kern Defendants' transfer on September 5 of Plaintiffs' investment from CDK I LP to CDK SPV cannot, by itself, support a claim under the Securities Exchange Act. The possibility of stating a Securities Exchange Act claim against EFSI seems an uphill struggle. Nevertheless, if Plaintiffs want to try to climb that mountain, it would be their first attempt. I will allow them that opportunity. I DISMISS the Securities Exchange Act claim against EFSI WITHOUT PREJUDICE.

Plaintiffs plead various state law claims for Violation of the Florida Securities and Investor Protection Act, Breach of Fiduciary Duty, Common Law Fraud/Fraud in the Inducement, Negligent Misrepresentation, Conversion, Unjust Enrichment, and Negligence. (D.I. 1 at ¶¶ 156-218). Since Plaintiffs' only federal claim has been dismissed as to both the Kerns Defendants and EFSI, I decline to exercise supplementary

8

jurisdiction over Plaintiffs' various state law claims. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2000). "If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits." *Id*. Therefore, I DISMISS the remainder of the claims against the Kerns Defendants and EFSI WITHOUT PREJUDICE.

I will grant Plaintiffs LEAVE to FILE a MOTION to AMEND. Plaintiffs are directed, if they file a motion to amend, to file the motion within fourteen (14) days of issuance of this order.[7]

IT IS SO ORDERED.

Entered this 4th day of March, 2026

_____
United States District Judge

---

[7] If Plaintiffs file such a motion, they are reminded to file not only the amended complaint itself, but also a redline comparing the amended complaint to the original complaint.